UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 1:12-cv-06672 |
| v. | ) | |
| | ) | Honorable Virginia M. Kendall |
| JOHN DOES 1-17, | ) | |
| | ) | |
| Defendants. | ) | |

MOTION FOR LEAVE TO PROCEED ANONYMOUSLY PURSUANT TO FED. R. CIV. P.
8, MOTION TO QUASH SUBPOENA PURSUANT TO FED. R. CIV. P. 45, MOTION TO
SEVER PURSUANT TO FED. R. CIV. P. 21, and MOTION TO SHOW CAUSE WHY
PLAINTIFF'S COMPLAINT SHOULD NOT BE DISMISSED

NOW COMES John Doe 15, by and through counsel, and in support of his Motion for

Leave to Proceed Anonymously, Motion to Quash, Motion to Sever and Motion to Show Cause,

shows the Court as follows:

**I. INTRODUCTION**

Malibu Media is a California film company that owns the copyrights to a large number of

pornographic films. Since February of 2012, Malibu Media has filed approximately 295 lawsuits

in federal courts across the country, naming hundreds, if not thousands, of John Doe defendants.

As of the date of this filing, Malibu Media has fourteen pending lawsuits in this District alone in

which they have named a total of 472 John Doe defendants. Certainly, copyright infringement is

a legitimate basis for suit, and if many people engage in copyright infringement, many people

may be sued. However, the general safeguards developed by federal courts to ensure that

defendants get a fair chance to present their defenses always apply, and in cases such as this,

where significant questions as to fairness, privacy and due process exist, those safeguards have

special importance.

In pursuit of its claim, Malibu filed a motion for expedited discovery prior to a Rule 26(f) conference. Pre-conference discovery is exceptional, and granted only upon a showing of good cause. Fed. R. Civ. P. 26(d)(1) and 26(b)(1). Good cause for granting such discovery exists where "the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Am. LegalNet, Inc. v. Davis*, 673 F.Supp.2d 1063 (C.D. Cal. 2009); *accord Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). Good cause is lacking when the prejudice that the requested discovery would impose outweighs Plaintiff's need. That prejudice, the likelihood of misidentification, makes such discovery less than reasonable "in light of all of the surrounding circumstances." *Momenta Pharms. Inc. v. Teva Pharms. Indus. Ltd.*, 765 F.Supp.2d 87, 88-89 (D. Mass. 2011).

Due to the necessarily *ex parte* nature of Plaintiff's motion, Plaintiff faced no adversaries to fully expound on the prejudices that John Doe 15 faces as a result of Plaintiff's expedited discovery. In this particular context, the Court must balance "the need to provide injured parties with an [sic] forum in which they may seek redress for grievances" against those of an ISP subscriber such as John Doe 15 "without fear that someone who wishes to harass or embarrass them can file a frivolous lawsuit and thereby gain the power of the court's order to discover their identity." *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578 (N.D. Cal. 1999).

Numerous courts have acknowledged the predatory reputation of litigation such as the case at bar, and the potentially inappropriate procedures being utilized by plaintiffs like Malibu Media to coerce private individuals into settling claims for thousands of dollars rather than face the possibility of public shame[1].

---

[1] "The risk of inappropriate settlement leverage is enhanced in a case like this involving salacious and graphic sexual content where a defendant may be urged to resolve a matter at an inflated value to avoid disclosure of the content the defendant was accessing." *Raw Films, Ltd. v. Does 1-32*, No. 11-cv-00532JAG, 2011 U.S. Dist. LEXIS 149215, *6-7 n.5 (E.D. Va. Dec. 29, 2011).

Moreover, Malibu Media lacks Article III standing concerning the putative copyright registrations at issue in this action against anyone. Malibu Media, LLC is a California limited liability company organized on February 8, 2011. (See attached report from the California Secretary of State). Each of the Works identified by Malibu Media in Exhibit B of its Complaint was created prior to Malibu Media's legal existence. (See Complaint, Ex. B). Malibu Media could not have been an employer of anyone prior to its formation, and as such, none of the Works identified were "made for hire". Significant questions exist as to the validity of the copyrights at issue and as such, as to whether Plaintiff has Article III standing to bring this action.

## II. TECHNICAL BACKGROUND

An ISP assigns an identifying number, called an Internet Protocol ("IP") address, to each ISP subscriber (such as Movant) whose computer the ISP connects to the Internet. Complaint ¶ 4; *United States v. Heckenkamp*, 482 F.3d 1142, 1144 n.1 (9th Cir. 2007). Typically, ISPs assign subscribers a dynamic IP address that changes over time. *United States v. Kearney*, 672 F.3d 81, 89 (1st Cir. 2012). An IP address serves to route traffic efficiently through the network.[2] An IP address does not identify the computer being used or its user.[3] Plaintiff has identified only the IP addresses of routers or wireless access points for accounts it alleges were used to infringe its protected work, *not* the infringing parties. Complaint ¶ 7, Complaint Ex. A. "IP subscribers are not necessarily copyright infringers." *VPR Internationale v. Does 1-1017*, No. 11-cv-02068-HAB-DGB, 2011 U.S. Dist. LEXIS 64656, *3 (N.D. Ill. Apr. 29, 2011). "Where an IP address might actually identify an individual subscriber and address the correlation is still far from perfect ... The infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment." *Id.* at *4; see also *Hard Drive Prods. v. John Doe*, Civ. A.

---

[2] *Poweroasis, Inc. v. Wayport, Inc.*, Civ. A. No. 04-12023-RWZ, 2007 U.S. Dist. LEXIS 34356, *35-38 (D. Mass. May 10, 2007), *vacated on other grounds*, 273 Fed. Appx. 964 (Fed. Cir. 2008).
[3] "IP addresses specify the locations of the source and destination nodes in the topology of the routing system." Wikipedia, *IP Address*, http://en.wikipedia.org/wiki/IP_address (as of April 18, 2012).

No. 11 CV 8333, 2012 U.S. Dist. LEXIS 89937, *6 (N.D. Ill. June 26, 2012).[4] Forensics firms often misidentify innocent subscribers as infringers for other reasons, including:

1.      IP addresses and timestamps that do not reliably identify the correct party;[5]

2.      An ISP subscriber with dynamic IP addressing through its website host shares its IP address with several other subscribers;[6] and

3.      Anyone with wireless capability can use a subscriber's wifi network to access the Internet, giving the impression that it is the subscriber who is engaged in potentially wrongful acts.[7]

## III.     ARGUMENT AND CITATION OF AUTHORITY

A.     **John Doe 15 Should Be Permitted To Proceed Anonymously Because His Privacy Interests Outweigh The Public's Interest In Knowing His Identity.**

There exists a presumption that the identity of parties to litigation is public information. However, that presumption, including the presumption that there would be prejudice to the opposing party from the concealment, may be rebutted by showing that the harm to the party

---

[4] See also *Third Degree Films v. Does 1-3577*, No. C-11-02768 LB, 2011 U.S. Dist. LEXIS 128030, *10 (N.D. Cal. Dec. 15, 2011) ("the ISP subscribers may not be the individuals who infringed upon Plaintiff's copyright") (citations omitted); *In re BitTorrent Adult Film Copyright Infringement Cases*, Civ. A. No. 11-3995 (DRH) (GRB) 2012 U.S. Dist. LEXIS 61447, *8-9 (E.D.N.Y. May 1, 2012) (citations omitted):

> An IP address provides only the location at which one of any number of computer devices may be deployed, much like a telephone number can be used for any number of telephones. ... Thus, it is no more likely that the subscriber to an IP address carried out a particular computer function ... than to say an individual who pays the telephone bill made a specific telephone call.

> Indeed, due to the increasingly popularity of wireless routers, it much less likely. While a decade ago, home wireless networks were nearly non-existent, 61% of US homes now have wireless access.... [A] single IP address usually supports multiple computer devices—which unlike traditional telephones can be operated simultaneously by different individuals… Unless the wireless router has been appropriately secured (and in some cases, even if it has been secured), neighbors or passersby could access the Internet using the IP address assigned to a particular subscriber and download the plaintiff's film.

[5] Michael Piatek et al., *Challenges and Directions for Monitoring P2P File Sharing Networks—or Why My Printer Received a DMCA Takedown Notice*, Proceedings of 3rd USENIX Workshop on Hot Topics in Security, at 3 (2008) (available at http://dmca.cs.washington.edu/uwcse_dmca_tr.pdf); *see also* Wikipedia, *IP address spoofing*, http://en.wikipedia.org/wiki/IP_address_spoofing (as of April 18, 2012) (the term IP address "spoofing" refers to creating a forged IP address with the purpose of concealing the user's identity or impersonating another computing system).

[6] Wikipedia, *Web hosting service*, http://en.wikipedia.org/wiki/Web_hosting_service (as of April 18, 2012).

[7] See, *VPR*, 2011 U.S. Dist. LEXIS 64656, at *3 (discussing raid by federal agents on home of IP subscriber falsely linked to downloading child pornography based on information provided by ISP; "Agents eventually traced the downloads to a neighbor who had used multiple IP subscribers' Wi-Fi connections (including a secure connection from the State University of New York).").

seeking to proceed anonymously exceeds the likely harm from concealment. *Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004). The district court has an independent duty to determine whether exceptional circumstances justify a departure from the normal method of proceeding in federal courts by permitting a party to proceed anonymously. *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997). "[R]equests for pseudonymity have been granted when anonymity is necessary to preserve privacy in a matter of a sensitive and highly personal nature." Third Degree Films, 2011 U.S. Dist. LEXIS 128030, at *11 (citation omitted). "An allegation that an individual illegally downloaded adult entertainment likely goes to [such] matters." Id. Anonymity is required to protect Movant's privacy. "Defendants' motions to quash subpoenas for the very purpose of protecting their identifying information ... should be allowed to proceed anonymously because assessing these preliminary matters without knowing defendants' identities causes plaintiffs no harm." CineTel Films, Inc. v. Does 1-1,052, Civil No. JFM 8:11-cv-02438, 2012 U.S. Dist. LEXIS 47701, *5 n. 2 (D. Md. Apr. 4, 2012). Such exceptional circumstances exist in the instant case.

It is noteworthy that both *Doe v. City of Chicago* and *Doe v. Blue Cross & Blue Shield United of Wisconsin*, *supra*, involve an attempt by the *plaintiff* to remain anonymous. A major component of the concern about parties proceeding anonymously involves a concern about plaintiffs attempting to access the federal courts without revealing their identities. In this case, however, it is a *defendant* who wishes to proceed anonymously. The Honorable John J. Tharp, Jr., a District Judge in this very court, has exercised the Court's discretionary power to allow a John Doe defendant in a case much like the case at bar to proceed anonymously through the discovery process, aptly noting that the case involved "matters of a sensitive and highly personal nature," that the harm to the public interest in allowing the John Doe defendant to remain

anonymous was small, and that the plaintiff would not be prejudiced by his ruling. *Sunlust Pictures, LLC v. Does 1-75*, 2012 U.S. Dist. LEXIS 121368, *14-15 (August 27, 2012). Judge Tharp expressly noted that a disputed allegation that a John Doe defendant illegally downloaded (and presumably viewed) pornography fit into the framework of other cases in which anonymous litigation was permitted. Id., *citing Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 712-13 (5th Cir. 1979). He also noted that because as a defendant, a John Doe has not purposely availed himself of the courts, the public's interest in knowing his identity is weaker.

The circumstances pertaining to John Doe 15 are exceptional, and he should be permitted to proceed anonymously. Plaintiff will not be prejudiced by allowing John Doe 15 to proceed anonymously, especially through discovery and dispositive motions. Plaintiff has all the information necessary to proceed through discovery and dispositive motions without having John Doe 15's name and personal identifiers. As noted by numerous federal courts, there is an overarching concern that the main objective in obtaining a John Doe defendant's name under these circumstances is to increase the pressure on the John Doe party to settle by increasing his anxiety about public disclosure about alleged infringing activity and viewing of pornographic films, a subject which Judge Tharp held in *Sunlust* to qualify as sufficiently personal to warrant permitting the John Doe defendant to proceed anonymously. Accordingly, pursuant to Judge Tharp's ruling in *Sunlust*, John Doe 15 respectfully requests that the Court enter an Order granting him leave to proceed anonymously in this case.

**B.      The Subpoena Seeking The Identity Of John Doe 15 Should Be Quashed.**

"[A] party has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests." United States v. Ranieri, 670 F.2d

702, 712 (7th Cir. 1982) (citing In re Grand Jury, 619 F.2d 1022, 1027 (3d Cir. 1980)); accord

Special Mkts. Ins. Consultants, Inc. v. Lynch, Case No. 11 C 9181, 2012 U.S. Dist. LEXIS

61088, *4-6 (N.D. Ill. May 2, 2012) (movant had standing to move to quash to avoid oppression,

embarrassment and undue burden imposed on movant, not on third party subject to subpoena).

The subpoena at issue here seeks John Doe 15's records, identifies him (by his IP address) and

required notice to him pursuant to statute. See 47 U.S.C. § 551.  Judges in this Court have

previously ruled that John Doe defendants in cases such as this (mass-joinder cases brought by

producers of pornography) that a John Doe defendant's privacy interests, even if only minimal,

provide him with standing to object to a subpoena. *Sunlust, LLC v. John Does 1-75*, 2012 U.S.

Dist. LEXIS 121368 at *1-2. These facts are sufficient to give John Doe 15 standing. Valero

Energy Corp. v. United States, Case No. 06 C 6730, *3-4 (N.D. Ill. Aug. 23, 2007) (party who

"is identified in the summons and is entitled to notice of the summons" had standing to move to

quash).

John Doe 15 has standing to present this Motion. He is a party to this action, though not

yet identified by name. An individual becomes a defendant when sufficiently identified in the

complaint, whether by an actual or fictitious name[8]. Even a fictitiously name defendant, who

identifies himself as the named party, is fully entitled to defend a claim against him. *Wilson v.*

*Frakes*, 178 Cal. App.2d 580, 581 (Cal. Ct. App. 1960) (answer filed by defendant "sued herein

as John Doe", according to the answer's introductory paragraph); accord *Millennium TGA, Inc.*

*v. Doe*, No. 10-cv-05603, 2011 U.S. Dist. LEXIS 94746, *3-4 (N.D. Ill. Aug. 24, 2011) (noting

"the inconsistency of the plaintiff's position that the Doe defendant lacks standing to pursue a

---

[8] "The status of parties, whether formal or otherwise, does not depend upon the names by which they are designated, but upon their relation to the controversy involved, its effect upon their interests, and whether judgment is sought against them. As here, the cause of action is against them, and substantial relief sought against them, they are real parties in interest." *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 30 n.3 (3rd Cir. 1985) (*quoting Grosso v. Butte Elec. Ry. Co.*, 217 F.422, 423 (D. Mont. 1914).

motion…because it has not been named or served, [while the complainant refers] to the 'Defendant' who the plaintiff expressly identifies in the…complaint as the person with [a particular] Internet Protocol address…").

John Doe 15 has standing to move to quash the third-party subpoena, as a defendant with an interest in not being subjected to bad faith settlement demands. A party with "sufficient interest to warrant its intervention" has standing to file a motion to quash, "notwithstanding that it is not the party subpoenaed." *Taylor v. Litton Med. Products, Inc.,* 19 Fed. R. Serv. 2d 1190, 1975 WL 166114, *3 (D. Mass. Jan. 23, 1975). "Parties need only have some personal right or privilege in the information sought to have standing to challenge a subpoena to a third party." *Third Degree Films, Inc. v. Does 1-108*, No. 11-cv—3007, 2012 U.S. Dist

In weighing a motion to quash in such cases, the Court must balance "the need to provide the injured part[y] with an [sic] forum in which [it] may seek redress for grievances" against the need to protect ISP subscribers from the "fear that someone who wishes to harass or embarrass them can file a frivolous lawsuit and thereby gain the power of the court's order to discover their identity." Columbia Ins. Co. v. Seescandy.com, 185 F.R.D. 573, 578 (N.D. Cal. 1999). The Court must consider "the expectation of privacy held by ... innocent users who may be dragged into the case (for example, because they shared an IP address with an alleged infringer)." London-Sire Records, Inc. v. Doe 1, 542 F. Supp. 2d 153, 179 (D. Mass. 2008). "The privacy interests of innocent third parties weighs heavily against the public's interest in access to court documents." Third Degree Films, 2011 U.S. Dist. LEXIS 128030, at *11. Internet "subscribers have a privacy interest created by Congress." Discount Video Ctr., Inc. v. Does 1-29, Civ. A. No. 12-10805-NMG, 2012 U.S. Dist. LEXIS 112518, *15 (D. Mass. Aug. 10, 2012) (citing 47 U.S.C. § 551). "Individuals generally possess a reasonable expectation of privacy in their home

computers." United States v. Lifshitz, 369 F.3d 173, 190 (2d Cir. 2004). An ISP's ability to access a subscriber's information "cannot be sufficient to extinguish a reasonable expectation of privacy." United States v. Warshak, 631 F. 3d 266, 286-87 (6th Cir. 2010). Moreover, the Illinois Constitution sets out even broader privacy protections than federal law for those who place their information in the hands of third parties. See People v. Jackson, 116 Ill. App. 3d 430, 434, 452 N.E. 2d 85 (Ill. Ct. App. 1983) ("the right to privacy is not waived by placing these records in the hands of a bank. The individual can still legitimately expect that her financial records will not be subject to disclosure.").

Any disclosure of information identifying John Doe 15 would subject him to a choice between public opprobrium and private blackmail on spurious claims. The "high risk of false positive identifications ... 'horror stories' of harassing and abusive litigation techniques ... and the nature of the copyrighted work in this case creates the possibility of undue embarrassment and harm were a Doe defendant's name to be publicly, but erroneously, linked to the illegal downloading of the plaintiff's copyrighted work." *Digital Sin., Inc. v. Does 1-27*, 12 Civ. 3873 (JMF), 2012 U.S. Dist. LEXIS 78832, *12-13 (S.D.N.Y. June 6, 2012).

In such cases, there is a risk not only of public embarrassment for the misidentified defendant, but also that the innocent defendant may be coerced into an unjust settlement with the plaintiff to prevent the dissemination of publicity surrounding unfounded allegations. The risk of a shake-down is compounded when the claims involve allegations that a defendant downloaded and distributed sexually explicit material. *Patrick Collins, Inc. v. Does 1-4*, 12 Civ. 2962 (HB), 2012 U.S. Dist. LEXIS 82253, *4 (S.D.N.Y. June 12, 2012). "[T]he practical reality of these types of cases—which, as noted, have proliferated across the country—is that almost all end in settlement and few, if any, are resolved on their merits." *Third Degree Films, Inc. v. Does 1-108*,

No. DKC 11-3007, 2012 U.S. Dist. LEXIS 59233, *11-12 (D. Md. Apr. 27, 2012) (citing SBO

Pictures, Inc. v. Does 1-3036, No. 11-4220 SC, 2011 U.S. Dist. LEXIS 137361, *10-12 (N.D.

Cal. Nov. 30, 2011)).

Plaintiff's request for discovery would violate John Doe 15's reasonable privacy interest

and is not justified, in light of the track record in cases such as the instant case in which

plaintiffs' use such discovery of personal information about ISP subscribers to coerce them into

unwarranted settlement payments. See, e.g., *Hard Drive Prods., Inc. v. John Doe*, Civ. A. No. 11

CV 8333, 2012 U.S. Dist. LEXIS 89937, *9 (N.D. Ill. June 26, 2012) (discussing common

litigation tactics employed in mass copyright litigation lawsuits and denying plaintiff

"unnecessary, broad, and prejudicial early discovery").

Plaintiff has failed to show that it would be likely to succeed on the merits if the

subpoena was not quashed and they were provided with John Doe 15's identifying information.

Plaintiff cannot in good faith claim that the requested discovery will identify an actual infringer.

Without showing that early discovery is "very likely" to positively identify infringers, it must be

denied. *Hard Drive Prods., Inc. v. Does 1-90*, No. C11-03825 HRL, 2012 U.S. Dist. LEXIS

45509, *6-8. Plaintiff respectfully requests that the Court enter an Order vacating or modifying

its Order authorizing early discovery and quashing the subpoena issued to John Doe 15's ISP.

B.    **John Doe 15 Should Be Severed From This Case Because Plaintiff Has Improperly
      Joined John Doe 15 Based On Entirely Disparate Alleged Acts.**

While "joinder of claims, parties and remedy is strongly encouraged," Fed. R. Civ. P. 20 sets

forth specific standards for permissive joinder. *United Mine Workers v. Gibbs*, 383 U.S. 715, 724

(1966). Under Rule 20, parties may be joined in a single lawsuit where the claims against them arise

from a single transaction or a series of closely related transactions.

Though an action may not be dismissed for misjoinder, the Court may drop a party at any time. Fed. R. Civ. P. 21; *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997). See, e.g. *IO Group, Inc. v. Does 1-19, No. C. 10-03851 SI, at \*3-4 (N.D. Cal. Dec. 7, 2010), IO Group, Inc. v. Does 1-435, No. C. 10-04382 SI, at \*2 (N.D. Cal. Jan. 10, 2011)*. In doing so, the Court may consider various factors to determine whether joinder "comport[s] with the fundamental principles of fairness," including the possibility of prejudice to John Doe 15 and the motives of Plaintiff in seeking joinder. See also *Coleman v. Quaker Oats*, 232 F.3d 1271, 1296 (9th Cir. 2000).

Plaintiff has asserted that its early discovery seeks to learn only identifying facts necessary to permit service on John Doe 15 (and the other 16 John Does in this case). However, joinder is inappropriate. Even assuming that John Doe 15 was an actual infringer, entered the same swarm and downloaded the same seed file, Plaintiff has failed to show that John Doe 15 exchanged any piece of the seed file with any other John Doe in this case. See *Boy Racer, Inc. v. Does 1-60,* 11-cv-01738-SI, 2011, 2011 U.S. Dist. LEXIS 92994, at \*4 (N.D. Cal., Aug. 19, 2011) (finding misjoinder because "Plaintiff [did] not plead facts showing any particular defendant illegally shared plaintiff's work with any other particular defendant.") Plaintiff has attempted to address this issue by alleging in its Complaint that

> "Pursuant to Fed. R. Civ. P. 20(a)(2), each of the Defendants was properly joined because…(a) each of the Defendants is jointly and severally liable for the infringing activities of each of the other Defendants, and (b) the infringement complained of herein by each of the Defendants as part of a series of transactions, involving the exact same torrent file containing Plaintiff's copyrighted Works, and was accomplished by the Defendants acting in concert with each other, and (c) there are common questions of law and fact; indeed, the claims against each of the Defendants are identical and each of the Defendants used the BitTorrent protocol to infringe Plaintiff's copyrighted Works."

*Complaint*, at pp. 2-3. However, Exhibit A to Plaintiff's Complaint, which consists of a small chart listing the John Doe Defendants and including, among other things, their "Doe #", IP address and "hit date", reveals that none of the "hits" occurred on the same day, the earliest "hit" occurred on June 9, 2012, and the last hit listed occurred on August 8, 2012. John Doe 15's alleged "hit" was on

June 11, 2012. *Complaint, Exhibit A.* Absent evidence that these John Does actually acted in concert to illegally download the films contained in Exhibit B of Plaintiff's Complaint (and Plaintiff has provided none), joinder is inappropriate. *See e.g. Boy Racer* at *4; Hard Drive Productions, Inc. v. Does 1-888, 11-cv-01566-JCS, 2011 U.S. Dist. LEXIS, at *7-14 (N.D. Cal. Aug. 23, 2011) (collecting cases); *AF Holdings LLC v. Does 1-97*, 11-cv-03067-CW, 2011 U.S. Dist. LEXIS 78636, at *4 (N.D. Cal. July 20, 2011) (holding that even though BitTorrent protocols differ from previous peer-to-peer platforms, joinder is improper).

An increasing number of courts have recently held, in cases involving Malibu Media, that joinder of groups of John Doe defendants is improper under Fed. R. Civ. P. 20, and, pursuant to Fed. R. Civ. P. 21, ordered that Does 2 and above be dropped from the case. *Malibu Media, LLC v. John Does 1-11 (7:12-cv-3810) (including rulings on Malibu Media LLC v. John Does 1-10 (12-cv-2949), Malibu Media, LLC v. John Does 1-16 (12-cv-3818), and Malibu Media, LLC v. John Does 1-21 (12-cv-3821)) (S. Dist. New York), (*7:12-cv-03810-ER, Document 5, Order of United States District Judge Edgardo Ramos severing all Does but Doe #1), *Malibu Media, LLC v. John Does 1-32*, 2:12-cv-2480-JAM-DAD (Document 16, Order and Findings and Recommendations dated October 9, 2012, severing all Does but Doe #1); *Malibu Media, LLC v. John Does 1-13*, 2:12-cv-1260-JAM-DAD (Document 30, Order and Findings and Recommendations dated October 10, 2012, severing all Does but Doe #1) .

As noted above, John Doe 15 is alleged to have been part of a "swarm" that occurred over the course of three months. However, Plaintiff has failed to allege, and cannot prove, that John Doe 15 interacted with or shared any portion of any file with any of the remaining John Doe defendants in this matter. Plaintiff cannot show that John Doe 15 acted in concert with anyone, and certainly cannot show that John Doe 15 is, in fact, the alleged infringer against whom they seek relief. In the instant case, Malibu Media is alleging that over the course of three months, John Doe 15 and the remaining John Doe defendants acted "in concert" to illegally download the pornographic films listed

on Exhibit B to Plaintiff's Complaint. However, Plaintiff attached to its Complaint a chart which clearly indicates that the IP address associated with John Doe 15 was not tracked sharing anything with any other defendant in this matter, and in fact there is no overlap of any kind in the dates and times alleged by Plaintiff.

Joinder of John Doe 15 in this matter is inappropriate under Fed. R. Civ. P. 20, and John Doe 15 respectfully requests that this court enter an order severing him from this matter pursuant to Fed. R. Civ. P. 21 and dismissing the case against him.

C.    The Subpoena Seeking John Doe 15's Personal Identifiers Should Be Quashed Because Plaintiff Lacks Article III Standing To Bring This Action.

To acquire standing to pursue a claim for copyright infringement, a plaintiff must show the ownership of a valid copyright. *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282 (1991). Under the Copyright Act of 1976, copyright ownership vests initially in the author or authors of the work. 17 U.S.C. § 201(a), *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989). Further, under 17 U.S.C. § 102, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Reid*, 490 U.S. at 737. However, an employer qualifies as an author if the work was prepared as a "work made for hire." 17 U.S.C. § 201(b).

When a claimant has not acquired rights to a work he or she is registering, the copyright statute requires that the copyright application include "a brief statement of how the claimant obtained ownership of the copyright." 17 U.S.C. §409(5). Willfully failing to state a fact, (or willfully misstating a fact), which may have cause the copyright office to reject the application is grounds for invalidating the registration." M. Nimmer & D. Nimmer, *Nimmer on Copyright*, §7.20 at 7-202. "A registration thus obtained is not only invalid, but is "incapable of supporting an infringement action." *Whimsicality, Inc. v. Rubie's Costume Co., Inc.*, 891 F.2d 452, 456 (2d Cir. 1989).

The copyright registrations comprising Exhibit B of Plaintiff's Complaint list Malibu Media, LLC as the employer for hire on all of the allegedly infringed copyrighted works. However, each of the 15 works included in Exhibit B was created and published between 2009 and 2011, all prior to the organization of Malibu Media, LLC under the laws of the State of California.

John Doe 15 respectfully requests that the Court issue a Show Cause Order as to how Malibu Media, LLC can possibly qualify as an "employer for hire" for works which were created months or years before Malibu Media, LLC came into existence. It is noteworthy that a John Doe defendant in yet another case filed by Malibu Media has raised this issue in the United States District Court for the Eastern District of Michigan. That case is known as Malibu Media, LLC v. John Does 1-13, 2:12-cv-12586-PJD-MJH. After a John Doe defendant in the Michigan case raised the issue of whether Malibu Media had standing to sue on a number of the movies also included in this case, Malibu issued a number of putative copyright assignments, all of which were dated September 13, 2012. (See Ex. A). Those assignments do not sufficiently transfer rights to sue for past infringements to Malibu Media (an issue John Doe 15 will fully brief in the Motion for Show Cause to be filed shortly). This case was filed on August 20, 2012. Assuming *arguendo* that any of the September assignments, and any that are filed by Malibu Media since then, cannot cure the defect that exists in their standing to bring this action. Standing must exist at the time of filing and at all times during the pendency of an action. Malibu Media simply does not have standing to bring this action, and did not have standing when the case was filed on August 20, 2012. This is a defect that cannot be cured. A Show Cause Order will promote judicial economy and general principles of justice and fairness. It appears that some of the John Doe defendants in this matter may have already paid settlements to Malibu Media in a case Malibu did not have standing to bring. The rights of additional parties to this case, including those of John Doe 15, will be significantly impacted by being forced to litigate a case in which Malibu Media has defects in its copyrights and lacks standing to sue. Furthermore, Malibu Media has filed a number of lawsuits, in this district and in others) for alleged infringement of films

created prior to its legal existence as a limited liability company, including the films at issue in this case.

Malibu Media, LLC lacks Article III standing to bring this suit. It could not have been an employer for hire when any of the allegedly infringed Works in this case were created. Moreover, a review of the documents provided to the United States District Court for the Eastern District of Michigan show that Malibu recently attempted to remedy their standing problem by filing copyright assignments that are defective and fail to remedy Malibu's lack of standing at the time this case was filed.

### VI. CONCLUSION

Plaintiff has failed to show that early discovery in this matter was permissible. A growing number of federal courts have acknowledged the risks in litigation by parties such as Malibu Media which is aimed not at litigating true copyright infringement cases, but rather suing large numbers of John Doe parties, utilizing early discovery processes to obtain the personal identifiers for individuals Plaintiffs knows well are not known to be an actual infringer, in order to gather large sums of money in settlements. Plaintiff is asking the Court to ignore the joinder rule and allow it to proceed against seventeen John Doe parties it has clearly displayed it cannot prove acted in concert with one another by providing a list of IP addresses and dates/times of hits that show clearly that none of these alleged infringers, including John Doe 15, were found to be sharing information with one another, or even on the same date and time. Plaintiff has also lacks standing to bring this suit against John Doe 15, or anyone else, because Malibu Media, LLC was not a legal entity at the time the Works were created, and as such could not have been "works for hire" owned by Malibu Media, LLC upon creation. John Doe will be filing an additional Motion for Show Cause providing a detailed analysis of the defects in Plaintiff's copyright filings supporting his contention that Malibu Media lacks standing.

WHEREFORE, John Doe 15 respectfully request that the Court's Order granting Plaintiff's motion for leave to take expedited discovery concerning John Doe 15 be revoked, and the subpoena issued thereunder by Plaintiff to Comcast be quashed. John Doe 15 further requests that he be

15

severed from this action, and the case against him be dismissed. Finally, John Doe 15 respectfully requests that the Court issue a Show Cause Order requiring Malibu Media to show it holds valid copyrights to the films listed in Exhibit B to its Complaint, and that it has Article III standing to bring this suit.

Respectfully submitted,

/s/ Erin Kathryn Russell
Erin Kathryn Russell
233 South Wacker Drive
84th Floor
T: 312-994-2424
F: 312-706-9766
erin@russellfirmchicago.com

CERTIFICATE OF SERVICE

This is to certify that on November 4, 2012, a copy of the foregoing has been filed with the Clerk of Court via the Court's ECF filing system, thereby serving it upon all counsel of record.

/s/ Erin Kathryn Russell

The Russell Firm
233 South Wacker Drive
84th Floor
T: 312-994-2424
F: 312-706-9766