IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | 12 C 6672 |
| | ) | |
| DAVID J. REYNOLDS, FELIX STANEK, | ) | Judge Virginia M. Kendall |
| GREGORY BLAKE and JOHN DOES 2-8, 10, | ) | |
| 11, 14, and 15, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Malibu Media, LLC ("Malibu Media"), a California film company that owns copyrights to a large number of pornographic films, filed this suit against David J. Reynolds, Felix Stanek, Gregory Blake, and eleven other anonymous defendants known to Malibu Media only by their alleged Internet Protocol ("IP") address (collectively, the "Defendants").[1] Malibu Media alleges that the Defendants committed direct and contributory infringement by copying and distributing a website containing fifteen federally registered copyrighted movies owned by Malibu Media in violation of the United States Copyright Act of 1976, as amended, 17 U.S.C. § 101 *et seq.* One of the unidentified defendants, John Doe 15 ("Doe 15"), moves for an Order to Show Cause for why Malibu Media's Complaint should not be dismissed for lack of standing. Doe 15 also moves to quash a subpoena served by Malibu Media upon Doe 15's Internet Service Provider, sever based on improper joinder, and proceed anonymously through the dispositive motion phase of this case. For the reasons stated herein, Doe 15's Motion to Quash and Motion to Show Cause are denied. Doe 15's Motion to Proceed Anonymously is granted. Because the

---

[1] On February 14, 2013, Malibu Media voluntarily dismissed Does 2-8, 10, 13, and 14 (Dkt. Nos. 44, 47-48.) The only remaining defendants are David J. Reynolds, Felix Stanek, Gregory Blake, Doe 11, and Doe 15.

1

Court, on its own motion, severs all remaining Defendants in this case with the exception of Doe 15, Doe 15's Motion to Sever is denied as moot.

## **BACKGROUND**

Malibu Media alleges that the Defendants were all users of "BitTorrent," a file sharing protocol (or set of computer rules) commonly used for distributing and sharing data on the Internet. According to Malibu Media each of the Defendants used the BitTorrent protocol to copy and distribute, without authorization, a torrent file containing fifteen of Malibu Media's registered works (the "Works"). Investigators retained by Malibu Media identified fifteen IP addresses, listed in Exhibit A of Malibu Media's Amended Complaint, that are alleged to have used the BitTorrent protocol to reproduce or distribute the Works. The individuals using these IP addresses are alleged to have engaged in infringing activity on different dates between June 9, 2012 and July 28, 2012 (Pl. Ex. A, Dkt. No. 24-1, p. 1.)

BitTorrent is a peer-to-peer file sharing system used to transfer files over the Internet. The BitTorrent protocol's popularity stems from its ability to distribute large files without imposing a heavy burden on the source computer and network. Before BitTorrent, users seeking to download data through peer-to-peer file sharing networks relied on the single-source technique, which required a user to form a one-to-one connection with a host computer for the purpose of downloading a file from that host. While the single-source method may have been adequate for transferring relatively small amounts of data, it proved cumbersome for users seeking to transfer larger data files. This is because the single source method requires one host computer and network to shoulder the entire burden of uploading a file to a particular user. The BitTorrent protocol overcomes this limitation by allowing users to join a "swarm" of host computers to download and upload fractions, or "pieces," of large files from each other

simultaneously, resulting in a reduced load on any one computer. While use of the BitTorrent protocol itself is not illegal, many of its users use it to unlawfully download and distribute copyrighted works.

In order to join a swarm and use the BitTorrent protocol, a user must first download a BitTorrent "Client Program," a software program that serves as the user's interface during the process of uploading and downloading data. Individuals who join a swarm to download and distribute a particular file are called "peers." A swarm is composed of two types of peers: "leechers" and "seeds." "A leecher is a peer in the process of acquiring a file. A seed is a peer that already has a complete copy of the file and that remains in the torrent to serve the leechers. Every torrent requires at least one seed." Annemarie Bridy, *Is Online Copyright Enforcement Scaleable?*, 13 Vand. J. Ent. & Tech. L. 695, 700 (2011). When a seed user decides to distribute a new file, he or she uses the Client Program to create a "torrent descriptor file." The Client Program then takes the target computer file, also known as the "Initial Seed," and divides it into segments called "pieces." Once the initial seed is divided into pieces, the Client Program assigns each piece a unique alphanumeric identifier (a "hash identifier") and records each piece's hash identifier within the torrent descriptor file. After the Initial Seed is created and uploaded to a torrent site, other peers may begin to download and upload pieces of the computer file to which the torrent is linked. BitTorrent's groundbreaking feature – its ability to allow users to pull small pieces of a sought-after file from several host computers – ensures that no single host is burdened with the task of uploading the entire file to a particular user. In order to protect the integrity of each piece and to ensure that any modification to a piece can be reliably detected, the hash identifier for a particular piece is compared to the hash identifier recorded in the torrent descriptor file for that piece every time it is downloaded by another user. Thus the hash

identifier works like an electronic fingerprint, identifying the source and origin of the piece and verifying that the piece is authentic, error-free, and uncorrupted.

In order to download a file using the BitTorrent protocol, a peer user must access a "torrent site," which indexes torrent files currently available for copying and distribution. As a peer receives pieces of the seed file, that peer automatically begins to upload those pieces to other peers in the swarm. In this way, BitTorrent's architecture resolves the free-rider problem that plagued older file-sharing networks such as Napster, Kazaa, and Limewire. Unlike its predecessors, which allowed users to download the content they desired without ever having to upload content to other peers, BitTorrent forces every downloader to also be an uploader of the transferred file, "making it architecturally impossible for any peer on the network to take without giving." *Id.* at 700-01; *see also Call of the Wild Movie, LLC v. Does 1-1062*, 770 F. Supp. 2d 332, 343 (D.D.C. 2011). The BitTorrent protocol does not entirely avoid the free-rider problem, however, because a peer is only forced to "pay it forward" by uploading to other users *while he or she remains connected to the swarm*. A peer may still avoid the burden of uploading to other peers by disconnecting from the swarm after obtaining a complete copy of the desired file.

Once a peer user has received every piece of the file, the BitTorrent Client Program rearranges the various pieces into their correct order, resulting in a file identical to the initial seed. This file becomes an additional seed within the same swarm, and remains available to other peers as long as the user that is in possession of the file remains connected to the swarm through the Client Program. The presence of the additional seed file also increases the speed, efficiency, and reliability of downloading activity for future peers entering the swarm. *See Digital Sin, Inc. v. Does 1-27*, No. 12 Civ. 3873 (JMF), 2012 WL 2036035, at *1 (S.D.N.Y. June 6, 2012). Therefore, users derive a benefit from the interconnected architecture of the BitTorrent

protocol even though they generally do not communicate with one another and will not have information about other users in their swarm other than their IP addresses. However, if a peer leaves the swarm after obtaining the seed file by closing the Client Program, changing the Client Program's settings to turn off automatic uploading, disconnecting from the Internet, or turning off his computer, peers who subsequently enter the swarm do not benefit from the earlier peer's activity.

## DISCUSSION

As the BitTorrent protocol allows users to share information anonymously, Malibu Media knows the eleven anonymous defendants only by their IP addresses. These IP addresses were assigned to the Defendants by their respective Internet Service Providers. On September 5, 2012, Malibu Media filed a motion for early discovery seeking leave to serve third party subpoenas pursuant to Rule 45 upon the unidentified Defendants' Internet Service Providers prior to a Rule 26(f) conference so that it may learn the Doe Defendants' true identities. Doe 15, one of the yet-to-be identified defendants in this action, argues the following in response to Malibu Media's motion for early discovery: (1) Malibu Media lacks standing to bring this action; (2) the subpoena seeking his identity should be quashed because it would impose an undue burden on Doe 15; (3) Doe 15 has been improperly joined in this lawsuit and should be severed from the case; and (4) Doe 15 should be permitted to proceed anonymously through the dispositive motion phase of the proceedings because his privacy interests outweigh the public's interest in knowing his identity.

### I. Standing

In order to acquire standing to pursue a claim for copyright infringement, a plaintiff must show the ownership of a valid copyright. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499

U.S. 340, 361 (1991); *HyperQuest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377, 381 (7th Cir. 2011) ("The Copyright Act restricts the set of people who are entitled to bring a civil action for infringement to those who qualify as '[t]he legal or beneficial owner of an exclusive right under a copyright ....' ") (quoting 17 U.S.C. § 501(b)).  Under the Copyright Act, copyright ownership "vests initially in the author or authors of the work." *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989) (quoting 17 U.S.C. § 201(a)).  The author is "the party who actually creates the work, that is, the person who translates the idea into a fixed, tangible expression entitled to copyright protection." *Id*; *see also* 17 U.S.C. § 102.  When a copyrighted work is classified as a "work for hire," the "employer or other person for whom the work was prepared is considered the author." 17 U.S.C. §§ 101, 201(b); *see also Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 591 (7th Cir. 2003).

The Works at issue in this case were registered with the United States Copyright Office as "works for hire" under  17 U.S.C. § 201(b).  According to Doe, these copyright registrations are defective because Malibu Media did not exist as an entity when any of the Works were created, thereby making it impossible for the works to be "made for hire" by Malibu Media.  Doe maintains that as a result of this defect, Malibu Media lacks Article III standing in this action and argues that the subpoena seeking his personal identifiers should therefore be quashed.  Malibu Media does not dispute that the Works were registered with the Copyright Office as "works for hire," but explains that this designation was made by mistake.  According to Malibu Media, each of the Works was created by Brigham Field ("Field"), Malibu Media's owner, and assigned to Malibu Media when Field formed the company in February of 2011.  By the time Malibu Media decided to register its copyrights for the Works with the United States Copyright Office, it had created a number of additional films, and therefore possessed copyrights to movies produced

both before and after it came into existence.  Instead of registering the films under two separate classifications, Malibu Media accidentally registered *all* of its films as "works for hire," – a classification that in fact should only have been applied to films created after Malibu Media was formed.  Malibu Media states that it has since filed notices of correction with the United States Copyright Office to amend this classification.

The error in Malibu Media's registration with the United States Copyright Office does not deprive it of standing to enforce its copyrights.  The Seventh Circuit has refused to invalidate copyrights based on challenges from alleged third-party infringers where the copyright at issue was mistakenly registered as a "work for hire" before the plaintiff entity existed and there is no dispute between the copyright owner and the transferee about the status of the copyright. *See Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 591 (7th Cir. 2003).  In *Billy-Bob Teeth*, the plaintiff mistakenly registered his copyright as a "work for hire" to a corporation that did not exist when the work was created. *Id.* at 589.  The district court determined that because the work predated the plaintiff's existence, the plaintiff could not enforce a copyright registered as a "work made for hire." *Id.* at 590.  On appeal, the Seventh Circuit agreed that the plaintiff could not claim that the work was made for hire because, among other things, the corporation was not formed until one year after the work was authored. *Id.* at 591.  However, the court found that the error on the registration was not fatal to the plaintiff's case. *See id.* (citing *Urantia Foundation v. Maaherra*, 114 F.3d 955, 963 (9th Cir. 1997) ("[C]ase law is overwhelming that inadvertent mistakes on registration certificates do not ... bar infringement actions, unless the alleged infringer has relied to its detriment on the mistake, or the claimant intended to defraud the Copyright Office by making the misstatement."); *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147 (1st Cir. 1994); *Whimsicality, Inc. v. Rubie's Costume, Co.*, 891 F.2d 452

(2d Cir. 1989)).

The facts here are strikingly similar. Field, like the plaintiff in *Billy-Bob Teeth*, registered his copyrights as "works for hire" to an entity that was not formed until after the work was authored. There is no dispute between Field and Malibu Media regarding the ownership of the copyrights, and Doe 15 does not refute that Field assigned all of his copyrights to Malibu Media, which then registered those copyrights with the United States Copyright Office. Based on these facts, the Court finds that the technical defect in Malibu Media's registration does not deprive it of standing to enforce its copyrights. *See Billy-Bob Teeth*, 329 F.3d at 592–93 ("[W]here there is no dispute between the copyright owner and the transferee about the status of the copyright, 'it would be unusual and unwarranted to permit a third-party infringer to invoke section 204(a) to avoid suit for copyright infringement.'") (quoting *Imperial Residential Design, Inc. v. Palms Development Group, Inc.*, 70 F.3d 96, 99 (11th Cir. 1995)). Accordingly, Doe 15's Motion to Show Cause is denied.

## II.    Motion to Quash

Federal Rule of Civil Procedure 45(a) permits the issuance of subpoenas to produce documents and other tangible things in the custody or control of a person. Fed.R.Civ.P. 45(a). Under Rule 45, a court must quash or modify a subpoena if it (1) fails to allow a reasonable time to comply; (2) requires a person who is neither a party nor a party's officer to travel more than 100 miles; (3) requires disclosure of privileged or other matter, if no exception or waiver applies; or (4) subjects a person to undue burden. Fed.R.Civ.P. 45(c)(3)(A)(i)-(iv). The party seeking to quash a subpoena under Rule 45(c)(3)(A) bears the burden of demonstrating that the information sought subjects a person to undue burden. As with other discovery issues, deciding whether to grant a motion to quash lies within the sound discretion of the district court. *See, e.g., Sullivan v.*

*Gurtner Plumbing, Inc.*, No. 11-cv-6261, 2012 WL 896159, at *1 (N.D. Ill. Mar. 13, 2012) (citing *United States v. Ashman*, 979 F.2d 469, 495 (7th Cir. 1992)).

Here, Doe 15 seeks to quash a subpoena issued to Comcast Cable ("Comcast"), Doe 15's Internet Service Provider and a nonparty in this case. As a general rule, Doe 15 lacks standing to quash a subpoena issued to a nonparty unless he has a claim of privilege attached to the information sought or unless it implicates his privacy interests. *See United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982) ("A party has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests."). District courts in this circuit are divided on the issue of whether a Doe defendant accused of copyright infringement has standing to object to a subpoena issued to his Internet Service Provider. *Compare Sunlust Pictures, LLC v. Does 1-75*, No. 12 C 1546, 2012 WL 3717768, at *2 (N.D. Ill. Aug. 27, 2012) (Tharp, J.) (Doe defendant had standing to object to the issuance of a subpoena upon his Internet Service Provider because he possessed "at least a minimal privacy interest in the information requested by the subpoena …."), *and Malibu Media, LLC v. John Does 1-14*, No. 12-CV-263, 2012 WL 6115653, at *2 (N.D. Ind. Dec. 10, 2012) (same), *with Third Degree Films, Inc. v. Does 1-2010*, No. 4:11 MC 2, 2011 WL 4759283, at *2 (N.D. Ind. Oct. 6, 2011) ("A Doe defendant lacks standing to move to quash a subpoena on the ground of undue burden when the subpoena is directed to the ISP rather than to him.").

The Court need not decide the issue here, however, because even if Doe 15 has standing to object to the subpoena, he has not demonstrated that its issuance will cause him undue burden. In determining whether a subpoena imposes an undue burden, the Court must ask whether "the burden of compliance with [the subpoena] would exceed the benefit of production of the material sought by it." *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 927 (7th Cir. 2004). In this case,

Malibu Media served several subpoenas, including the subpoena implicating Doe 15, to the putative Defendants' Internet Service Providers. Because Doe 15 is not the party directed to respond to the subpoena and no action is required of him, he cannot maintain that the subpoena creates an undue burden on him. *See, e.g., Malibu Media, LLC v. John Does 1-14*, No. 1:12-CV-263, 2012 WL 6115653, at *2 (N.D. Ind. Dec. 10, 2012) ("[A]ny argument that this subpoena imposes an undue burden on Doe No. 12 fails because, as courts have consistently recognized, a subpoena directed at an ISP does not require the defendant to produce anything"); *Sunlust Pictures*, 2012 WL 3717768, at *2 ("The subpoena does not impose an undue burden on Doe because he is not the party directed to respond to it.); *Hard Drive Productions, Inc. v. Does 1-48*, No. 11-962, 2012 WL 2196038, at *3 (N.D. Ill. June 14, 2012) ("[T]he subpoenas do not burden [the anonymous defendant] because they do not require any action of [him].."); *First Time Videos, LLC v. Does 1-18*, No. 4:11-cv-69-SEB-WGH, 2011 WL 4079177, at *1 (S.D. Ind. Sept. 13, 2011) ("[T]he issuance of a subpoena to the Internet Service Provider of putative defendants does not create an undue burden on the putative defendants because they are not required to produce anything."); *First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241, 250 (N.D. Ill. 2011) (Castillo, J.) ("The subpoena's served on Doe Defendants' ISPs do not subject the Doe Defendant to an undue burden; if anyone may move to quash these subpoenas on the basis of an undue burden, it is the ISPs themselves, as they are compelled to produce information under the subpoena."); *Voltage Pictures, LLC v. Does 1-5,000*, 818 F.Supp.2d 28, 36 (D.D.C. 2011) (finding Doe defendant lacked standing to quash as subpoena on the ground of undue burden when the subpoena is directed to the Internet Service Provider rather than to him because the subpoena requires the Internet Service Provider, not the Doe Defendant, to produce information). Doe 15's Motion to Quash is therefore denied.

### III.    Motion to Proceed Anonymously

Doe 15 also moves, in the event that is Motion to Quash is denied, to proceed anonymously and for the entry of a protective order prohibiting the publication of his name through the dispositive motion phase of this case.  Doe 15 argues that allowing his identity to be revealed publicly at this stage in the proceedings would enable Malibu Media to leverage Doe 15's fear of being embarrassed (for being named a defendant in a case involving illegally obtained pornography) to obtain settlement.  Malibu Media has indicated to the Court that while it opposes a blanket protective order prohibiting *Malibu Media* from receiving Doe 15's identity, it does not object to allowing Doe 15 to remain anonymous through the end of discovery. However, even where a motion to proceed anonymously is unopposed, the court must make "an independent determination of the appropriateness" of the plaintiff's motion to conceal his name. *Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004) (finding error where district court judge did not make an independent determination of the plaintiff's unopposed motion to proceed anonymously).

Courts have recognized that anonymous litigation may be permitted in "matters of a sensitive and highly personal nature such as birth control, abortion, homosexuality or the welfare rights of illegitimate children or abandoned families." *South Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 712–13 (5th Cir. 1979).  In this specific context, this Court is not the first to recognize that claims against mass defendants and motions to discover defendants' identities may be used to shame defendants into settlement agreements where they may otherwise have a meritorious defense. *See Sunlust Pictures*, 2012 WL 3717768, at *5 ("Judges within this district have recognized that plaintiffs in these types of cases might unfairly threaten to disclose defendants' identities in order to improperly leverage settlement

negotiations.") (citing *Hard Drive Productions*, 2012 WL 2196038, at \*6. Another court has

described the "common arc" of plaintiffs' litigating tactics in such cases:

> (1) a plaintiff sues anywhere from a few to thousands of Doe defendants for
> copyright infringement in one action; (2) the plaintiff seeks leave to take early
> discovery; (3) once the plaintiff obtains the identities of the IP subscribers through
> early discovery, it serves the subscribers with a settlement demand; (4) the
> subscribers, often embarrassed about the prospect of being named in a suit
> involving pornographic movies, settle. Thus, these mass copyright infringement
> cases have emerged as a strong tool for leveraging settlements–a tool whose
> efficiency is largely derived from the plaintiffs' success in avoiding the filing fees
> for multiple suits and gaining early access en masse to the identities of alleged
> infringers.

*MCGIP, LLC v. Does 1-149*, No. 11 C 2331, 2011 WL 4352110, at \*4 n. 5 (N.D. Cal. Sep. 16,

2011).

On the other hand, the fact that suits of this nature settle quickly does not mean there is

any wrongdoing on the part of copyright owners. *See Patrick Collins, Inc. v. John Does 1-9*, No.

12-CV-3161, 2012 WL 4321718, at \*5 (C.D. Ill. Sep. 18, 2012). It would be unfair to deprive

owners of copyrights to pornographic material the same protections as owners of other

copyrighted work. *See id*; *Malibu Media, LLC v. John Does 1-14*, No. 12-CV-263, 2012 WL

6019259 (N.D. Ind. 2012) (finding that "the potential for embarrassment ... does not outweigh

Plaintiff's statutory right to protect its property interest in its copyright"). Court must also

consider the harm to the public interest in allowing Doe 15 to remain anonymous. *See Doe v.

Smith*, 429 F.3d 706, 710 (7th Cir. 2005) ("The public has an interest in knowing what the

judicial system is doing, an interest frustrated when any part of litigation is conducted in secret.")

In this case, the harm to the public interest is minimal. Doe 15 does not request that the

case move forward under seal, nor does he move for a blanket protective order barring disclosure

of his identity for the duration of this litigation. Instead, Doe 15 asks that he be permitted to

proceed under a pseudonym through the filing of dispositive motions in this case. This is especially appropriate where, as here, there is an increasing amount of uncertainty as to whether the IP address identified by Malibu Media's investigators actually reflects activity performed by the subscriber to that address. *See, e.g., Digital Sin v. Does 1-176*, 279 F.R.D. 239, 242 (S.D.N.Y. 2012) (issuing protective order requiring that any information regarding Doe defendants be treated as confidential after expressing "concern[] about the possibility that many of the names and addresses produced in response to Plaintiff's discovery request will not in fact be those individuals who downloaded [copyrighted pornography]"); *see also In re BitTorrent Adult Film Copyright Infringement Cases*, No. 11-3995, 2012 WL 1570765, *3 (E.D.N.Y. May 1, 2012) (recognizing that due to the wide use of wireless routers, "the assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous, and one that has grown more so over time"). Furthermore, unlike cases where courts have disapproved of allowing a party to proceed anonymously, *see Doe v. City of Chicago*, 360 F.3d at 669; *Doe v. Blue Cross & Blue Shield United States of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997), it is the Defendant in this case who seeks the Court's leave to proceed anonymously, not the plaintiff. Under such circumstances, the Court is less concerned about parties seeking access to federal courts without revealing their identity. *See Sunlust Pictures*, 2012 WL 3717768, at *6 (allowing Doe defendant who allegedly downloaded pornography illegally using BitTorrent to proceed anonymously, noting that "because Doe (as a defendant) has not purposely availed himself of the courts, the public's interest in knowing his identity is weaker"). Additionally, while Malibu Media does not express its view toward allowing Doe 15 to proceed anonymously through the dispositive motion phase of these proceedings, it does not object to allowing Doe 15 to remain anonymous through

the end of discovery.  Lastly, Malibu Media will not be unfairly prejudiced because it will know Doe 15's true identity and will be able to investigate whether its claims have merit.  The only consequence for Malibu Media is that it will be deprived the leverage to force Doe 15 into settlement by publicly disclosing his identity.

Upon balancing the potential embarrassment to Doe 15 and the possibility that Malibu Media could use inappropriate litigation tactics to "coerce" a settlement, against the public's interest in knowing Doe 15's true identity and the risk of unfair prejudice to Malibu Media, the Court finds that allowing Doe to proceed by pseudonym is, at least at this stage of the proceedings, appropriate.  The Court may revisit this issue if Malibu Media's claims survive dispositive motions.

## IV.    Motion to Sever for Improper Joinder

Doe 15 also moves to be severed from this case, arguing that he was improperly joined as a defendant because Malibu Media's allegations against him involve acts that are unrelated to the allegations against the other defendants in this case.  A plaintiff may join two or more defendants in a single action under Federal Rule of Civil Procedure 20 if two independent requirements are satisfied: (1) the claims against the defendants must be asserted "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and (2) there must be a "question of law or fact common to all defendants." *See* Fed.R.Civ.P. 20(a)(2).  The purpose of the rule is "to promote trial convenience and to expedite the resolution of disputes, thereby preventing multiple lawsuits," 7 Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure* § 1652.  "[T]he impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

Although "transaction or occurrence" is not defined in Rule 20(a), courts interpret the term as "comprehend[ing] a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Lozada v. City of Chicago*, No. 10 C 1019, 2010 WL 3487952 at *2 (N.D. Ill. Aug. 30, 2010) (Aspen, J.) (quoting *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974) ("[A]ll 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence.")); *see also Dean v. City of Chicago*, No. 09 C 1190, 2009 WL 2848865, at *2 (N.D. Ill. Aug. 31, 2009) (Kennelly, J.) (also citing *Mosley*). In addition to the requirements of Rule 20, the Court may also consider "other relevant factors in a case in order to determine whether the permissive joinder of a party will comport with the principles of fundamental fairness." *Chavez v. Illinois State Police*, 251 F.3d 612, 632 (7th Cir. 2001) (quoting *Desert Empore Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980)). For example, courts may consider "factors such as the motives of the party seeking joinder and whether joinder would confuse and complicate the issues for the parties involved." *See SBO Pictures, Inc. v. Does 1-57*, No. 12-22, 2012 WL 1415523, at *2 (D.Md. Apr. 20, 2012). This Court has wide discretion in deciding whether to sever a party for improper joinder. *See Chavez*, 251 F.3d at 632 (citing *Intercon Research Associates, Ltd. v. Dresser Indus., Inc.*, 696 F.2d 53, 56 (7th Cir. 1982)).

In copyright infringement cases involving peer-to-peer file-sharing systems that predate the BitTorrent protocol, numerous courts have found that "the alleged use of the same peer-to-peer network by a group of Doe defendants to commit copyright infringement is insufficient to sustain the permissive joinder." *Hard Drive Prods., Inc v. Does 1-188*, 809 F.Supp.2d 1150, 1156–59, 2011 WL 3740473, at *7–9 (N.D. Cal. Aug. 23, 2011) (analyzing pre-BitTorrent peer-to-peer case law); *see also IO Group, Inc. v. Does 1-19*, No. C 10-03851 SI, 2010 WL 5071605,

at *3 (N.D. Cal. Dec. 7, 2010) (collecting pre-BitTorrent case law). However, as explained above, the architecture of the BitTorrent file sharing system necessitates a degree of cooperation that did not exist in older incarnations of peer-to-peer file-sharing networks. Here, Malibu Media relies on the BitTorrent protocol's unique design to support its position that joinder is proper, arguing that by joining the same swarm to download a copy of the Works, the Defendants engaged in copyright infringement through a common series of transactions.

Due to the recent proliferation suits involving the BitTorrent protocol, courts across the country have been asked to consider whether downloading and uploading pieces of the exact same digital copy of a work through the BitTorrent protocol means that the defendants' actions are transactionally-related for the purposes of Rule 20(a)(2). *See SBO Pictures*, 2012 WL 1415523, at *2 (collecting cases). These courts have recognized that because a BitTorrent swarm forms around a specific copy of a file and not the copyrighted work itself, a plaintiff bringing a copyright infringement suit based on the alleged illegal use of BitTorrent must allege not only that the defendants downloaded the same copyrighted work, but that they did so by participating in the same BitTorrent swarm. *See, e.g., Hard Drive Prods. v. Does 1-53*, No. C-11-2330 EDL, 2011 WL 2837399, at *1 (N.D. Cal. July 14, 2011) ("Since a swarm develops around an originally seeded file, it appears that two or more different files of the same copyrighted work could potentially seed two or more different swarms."); *Pacific Cent. Intern. Ltd. v. Does 1-101*, No. C-11-02533 (DMR), 2011 WL 2690142, at *3 (N.D. Cal. July 8, 2011) ("BitTorrent users may upload different initial files of a given work, which results in the creation of distinct swarms.").

The issue before the Court in this case, however, takes the inquiry a step further. Here, the Court is asked to determine whether anonymous participation in the same BitTorrent swarm,

without a showing that the Defendants accessed the swarm at the same time, is sufficient to allow for joinder under Rule 20(a)(2). To date, no Circuit Court of Appeals has addressed the issue. A number of district courts – within this District and across the country – have been faced with this question and reached different conclusions. *See Pacific Century Int'l v. Does 1-31*, No. 11-9064, 2012 WL 2129003, at *2 (N.D. Ill. June 12, 2012) (recognizing a split of authority and collecting cases). On the one hand, the BitTorrent protocol, by virtue of its design, entails a degree of cooperative activity that did not exist in previous peer-to-peer file-sharing systems. Relying on BitTorrent's architecture, some courts have concluded that Doe defendants' infringing activities arise from the same series of transactions or occurrences if the illegally downloaded torrent file's unique hash identifier links each Doe defendant to the same Initial Seed and swarm. *See, e.g., Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 244, at *5 (S.D.N.Y. 2012) ("[I]t is difficult to see how the sharing and downloading … as a part of a chain or 'swarm' of connectivity designed to illegally copy and share the exact same copyrighted file ... could not constitute a 'series of transactions or occurrences' for the purposes of Rule 20(a)."); *Pacific Century Int'l v. Does 1-31*, 2012 WL 2129003, at *2 (N.D. Ill. June 12, 2012) (Leinenweber, J.) (joinder appropriate where plaintiff alleged that various "anonymous defendants participated in the same swarm (at varying times spanning just over one month)"); *Patrick Collins, Inc. v. John Does 1-21*, 282 F.R.D. 161, 168–169 (E.D. Mich. 2012) (holding that "the law of joinder does not have as a precondition that there be temporal distance or temporal overlap; it is enough that the alleged BitTorrent infringers participated in the same series of uploads and downloads in the same swarm," adding that "the technology underlying BitTorrent [makes] it different from other file sharing methods, for joinder purposes"); *First Videos, LLC v. Does 1-76*, 276 F.R.D. 254, 257 (N.D. Ill. 2011) (Castillo, J.) (the fact that "the

downloading is alleged to have taken place over the space of more than a month ... do[es] not make joinder inappropriate" considering "[t]he nature of the BitTorrent distribution protocol necessitates a concerted action by many people in order to disseminate files ...."); *Hard Drive Prods., Inc. v. Does 1-55*, No. 11 C 2798, 2011 WL 4889094, at *5 (N.D. Ill. Oct. 12, 2011) (Darrah, J.) (plaintiff's allegation that Doe defendants infringed its copyrights "through BitTorrent—the nature of which necessitates a concerted action by many people in order to disseminate files—is sufficient to satisfy Rule 20(a)").

Other courts have determined that participation in a common swarm is a necessary, but insufficient condition to support joinder under Rule 20(a). These courts have found joinder improper absent a showing that the Doe defendants were present in the same swarm *at the same time*. *See, e.g., Sunlust Pictures, LLC v. Does 1-75*, No. 12 C 1546, 2012 WL 3717768, at *4 (N.D. Ill. Aug. 27, 2012) (Tharp, J.) (finding joinder appropriate where plaintiff alleged that the defendants participated in the swarm at the same time, and observing that "[t]he courts that have denied joinder in the BitTorrent context have generally done so because the plaintiff failed to allege that the defendants simultaneously participated in a single swarm or that the defendants distributed files directly among themselves"); *Digital Sins, Inc. v. Does 1-245*, No. 11-8170, 2012 WL 1744838, *2 (S.D.N.Y. May 15, 2012) (finding joinder improper where complaint "allege[d] that separate defendants shared access to a file containing a pornographic film in separate and isolated incidents over the course of 59 days," reasoning that such allegations merely asserted that the defendants "committed the same type of violation in the same way" and thus did not satisfy the requirements of permissive joiner) (internal quotations omitted); *In re BitTorrent Adult Film Copyright Infringement Cases*, No. 11-3995, 2012 WL 1570765, *11 (E.D.N.Y. May 1, 2012) (finding that plaintiff's assertion that defendants were acting in concert

"rests on a thin reed" where the dates of downloading provided in plaintiff's complaint were weeks or months apart); *SBO Pictures, Inc. v. Does 1-57*, No. 12-22, 2012 WL 1415523, at *2 (D.Md. Apr. 20, 2012) (denying joinder where downloads and uploads occurred over a three-month period, stating that "the better-reasoned decisions have held that where a plaintiff has not plead that any defendant shared file pieces directly with one another, the first prong of permissive joinder is not satisfied"); *Cinetel Films, Inc. v. Does 1-1,052*, No. JFM 8:11-cv-02438, 2012 WL 1142272, at *6 (D.Md. Apr. 4, 2012) (stating that "even if the IP addresses at issue in this motion all came from a single swarm, there is no evidence to suggest that each of the addresses acted in concert with all the others" because "the alleged infringement was committed by unrelated defendants, through independent actions, and at different times and locations," and adding that "[a] majority of courts have specifically held that the properties of BitTorrent are insufficient to support joinder"); *Third Degree Films, Inc. v. Does 1-131*, 280 F.R.D. 493, 496-97 (D.Ariz. 2012) (joinder of an entire swarm that lasted many months improper because some participants may never overlap one another); *Raw Films, Ltd. v. Does 1-32*, No. 1:11-CV-2939-TWT, 2011 WL 6840590, at *2 (N.D. Ga. Dec. 29, 2011) (Defendants not engaged in a common series of transactions as required by Rule 20 where plaintiff's complaint alleged that some Doe defendants were in the swarm over four months apart, finding that "differing dates and times of each Defendant's alleged sharing do not allow for an inference that the Defendants were acting in concert."); *Liberty Media Holdings, LLC v. BitTorrent Swarm*, 277 F.R.D. 669, 671–72 (S.D. Fla. 2011) (finding joinder improper after "[a] close examination of Defendants' activity reveal[ed] that Defendants, subject to one exception, used BitTorrent on different days and at different times over a two-month period," explaining that "[m]erely participating in a BitTorrent swarm does not equate to participating in the same 'transaction, occurrence, or series of

transactions or occurrences' "); *On The Cheap, LLC v. Does 1-5011*, 280 F.R.D. 500, 502 ("Most recent decisions on this issue have concluded that the use of the BitTorrent protocol does not distinguish these cases from earlier rulings in P2P cases in which courts found that joining multiple Doe defendants was improper since downloading the same file did not mean that each of the defendants were engaged in the same transaction or occurrence."); *MCGIP, LLC v. Does 1-149*, No. 11-2331, 2011 WL 4352110, at *3 (N.D. Cal. Sep. 16, 2011) (misjoinder where plaintiff "failed to show that any of the 149 Doe defendants actually exchanged any piece of the seed file with one another"); *Hard Drive Products, Inc. v. Does 1-188*, 809 F.Supp.2d 1150, 1164 (N.D. Cal. 2011) (misjoinder where plaintiff conceded that "while the Doe Defendants may have participated in the same swarm, they may not have been physically present in the same swarm on the exact same day and time"); *Boy Racer, Inc. v. Does 1-60*, No. 11-1738, 2011 WL 3652521, at *4 (N.D. Cal. Aug. 19, 2011) (severing defendants where "[p]laintiff [did] not plead facts showing that any particular defendant illegally shared plaintiff's work with any other particular defendant"); *CP Productions, Inc. v. Does 1-300*, No. 10 C 6255, 2011 WL 737761, at *1 n.2 (N.D. Ill. Feb. 24, 2011) (Shadur, J.) ("It would constitute a real stretch of the normal meaning of language for [the plaintiff] to call Rule 20(a)(2)(A) into play as the asserted predicate for lumping its separate asserted claims into a single lawsuit.").

The latter line of cases reflects a more complete understanding of the mechanics of the BitTorrent protocol. Despite its cooperative design, the BitTorrent protocol's architecture alone does not compel the conclusion that anonymous defendants who download copies of the same file from the same swarm are engaged in a common transaction or series of transactions for the purposes of Rule 20(a)(2). Where a swarm continues to exist for an extended period of time, it is improbable that defendants entering a swarm weeks or months apart will actually exchange

pieces of data. Furthermore, it is impossible for defendants who are not in a swarm coextensively to exchange any pieces of a file. A recently published Note in the Michigan Law Review explains by way of example:

> [I]magine a swarm developed around a file seeded by A. On Day 1, B, C, and D enter that swarm with A and help each other acquire the file by exchanging pieces of the file with one another. Their exchange can fairly be called the same "series of transactions" for the purposes of Rule 20. Now, after the exchange, assume all four stay plugged into the swarm through Day 2, uploading pieces of the file to any other users who enter into the swarm. On Day 3, B, C, and D disconnect. The next day, E, F, and G enter the swarm with A. Since the swarm develops around the file, E, F, and G are part of the same swarm that A, B, and C were in. However, now the file exchange is occurring between A, E, F, and G. By contrast, B, C, and D have no involvement with the second exchange because they left the swarm. Given that B, C, and D were not and could not be sources for E, F, and G, the former group's acquisition of the file was a wholly separate series of transactions from the latter's. Instead, the only link between the parties is that they used the same peer-to-peer network to copy and reproduce a plaintiff's video.

Sean B. Karunaratne, Note, *The Case Against Combating BitTorrent Piracy Through Mass John Doe Copyright Infringement Lawsuits*, 111 Mich. L. Rev. 283, 295 (Nov. 2012); *see also Third Degree Films*, 280 F.R.D. at 498 (finding joinder requirements not met based on "the fact that a particular swarm, including the swarm at issue in this case, can last for many months. During those months, the initial participants may never overlap with later participants").

The Court recognizes that this example paints a relatively simplified picture of the activity in a BitTorrent swarm, which in reality can involve thousands of users, dozens of seed files, and span for several months. Nevertheless, the example is instructive here. Exhibit A to Malibu Media's Amended Complaint – a chart listing the John Doe Defendants, their IP addresses, and "hit date" – indicates that the Defendants accessed the swarm at different dates and times between June 9, 2012 and July 28, 2012. (Dkt. No. 24-1.) Doe 15, the movant in this case, is alleged to have been part of the swarm on June 11, 2012 at 2:53 a.m. (*Id.*) He was

preceded most recently in the swarm by Doe 4, who is alleged to have been present in the swarm on June 9, 2012 and followed by Doe 8, who appears to have accessed the swarm on June 13, 2012.[2] (*Id.*)  It is undisputed that any pieces of the Works downloaded or uploaded by Doe 15 were derived from the same Initial Seed as the pieces downloaded by Does 4 and 8.  There is no indication, however, that Doe 4, or the Does that preceded him, remained in the swarm long enough to exchange pieces of the Works with Doe 15.  Nor has Malibu Media demonstrated that Doe 15 remained in the swarm long enough to exchange data with Doe 8, or with Doe Defendants who joined the swarm after Doe 8.  If Doe 4 left the swarm after obtaining the file, and Doe 15 did the same, Doe 15 would not have exchanged any data with either defendant despite having obtained the same seed file from the same swarm.  Therefore, even assuming that Doe 15 was an actual infringer, entered the same swarm and downloaded the same seed file, Malibu Media has failed to demonstrate Doe 15 exchanged any piece of the seed file with any other defendant in this case.

The Court also recognizes that it has previously held in a similar case that disputes related to joinder are premature at this stage of the proceedings. *See MGCIP v. Does 1-316*, No. 10 C 6677, 2011 WL 2292958, at *2 (N.D. Ill. June 9, 2011).  While a case decided a mere eighteen months ago might constitute "recent" case law in many other contexts, this particular area of law and the federal judiciaries understanding of the implications of joinder in such cases has developed significantly over the past eighteen months.  This Court's own research reveals that prior to its decision in *MGCIP*, seven courts in this country had addressed whether it is appropriate to allow joinder of defendants who participate in the same BitTorrent swarm.  Since

---

[2] The purpose here is to illustrate by way of example the tenuous connection between Doe defendants who are joined in a suit by virtue of their presence in the same swarm.  The Court recognizes that Does 4 and 8 have since been voluntarily dismissed from this action.

then, 186 district and magistrate courts have addressed the issue. Through scores of proceedings, and with the help of undoubtedly thousands of pages of briefing on the issue, courts now have a more complete understanding of the mechanics of the BitTorrent protocol and its implications relating to joinder under Rule 20. Courts have also had the opportunity to witness the development and lifecycle of dozens of BitTorrent proceedings and appreciate more fully the complications that can arise as a result of mass joinder once such cases reach the more detailed phase of discovery. As evidenced by the cases cited above, courts throughout the country – on both sides of the swarm-joinder debate – are in agreement that it is not only appropriate, but prudent to address the issue of joinder before litigation of this type is permitted to proceed to further.

Malibu Media argues that because the Defendants here downloaded the same torrent file, as evidenced by the file's unique hash identifier, it can demonstrate "with mathematical certainty" that the Defendants committed the infringing acts through the same transaction or series of transactions. Relying on *Patrick Collins, Inc. v. John Does 1-21*, 282 F.R.D. 161, 168-169 (E.D. Mich. 2012), Malibu Media submits there are only four possible ways Doe 15 could have acquired the file: (1) the Defendants connected to and transferred a piece of the Works from the initial seeder; (2) the Defendants connected to and transferred a piece of the Works from a seeder who downloaded the completed file from the initial seeder or from other peers; (3) the Defendant connected to and transferred a piece of the Works from other Defendants who downloaded from the initial seeder or from other peers; or (4) the Defendant connected to and transferred a piece of the Works from other peers who downloaded from other Defendants, other peers, other seeders, or the initial seeder.

Even assuming these four possibilities compose the entire universe of ways in which a

Doe defendant could obtain a copyrighted work from a particular swarm, it does not follow that Doe defendants participating in the same swarm actually exchange any pieces of data with one another. If Doe 15 connected to the swarm on June 11, 2012 and downloaded a piece of the Works from other peers who downloaded from other Defendants, Doe 15 would have been engaged in a series of transactions – downloads and uploads – with peers, other Defendants, and seeders who were simultaneously present in the swarm. He could not fairly be said to have engaged in a transaction or series of transactions with peers who entered the swarm and left days, weeks, or months before his arrival. Furthermore, without showing that Doe 15 remained in the swarm after his June 11 "hit date," Malibu Media cannot maintain that Doe 15 acted in concert with Defendants that arrived subsequently by contributing to the chain of data distribution. Once a BitTorrent user disconnects from a swarm, any subsequent activity in that swarm is independent of the activity that took place during his presence. Malibu Media points to no facts alleging that the Doe Defendants who joined the swarm after Doe 15 obtained any pieces of the file from Doe 15, or from another peer who obtained the file from Doe 15. The only nonconjectural link between Defendants who access a swarm at different times is their mutual reliance on the Initial Seeder's upload of the file; they do not rely on each other, nor do they necessarily pave the way for later participants to obtain the file. For example, had Doe 15 never entered the swarm on June 11, 2012, the remaining Does would still have been able to download the Works as alleged so long as someone possessing the Initial Seed or a complete copy remained in the swarm.

Malibu Media nevertheless argues that even if most of the Defendants' hit dates do not overlap with one another, the parties should be joined because the BitTorrent protocol allows for continuous seeding and distributing of copyrighted material weeks after a peer's initial

download.  Again Malibu Media relies on the analysis from *Patrick Collins v. John Does 1-21*, where the district court allowed joinder in a factually similar scenario, explaining:

> [I]t is not that an infringer would wait six weeks to receive the movie, it is that the infringer receives the Movie in a few hours and then leaves his or her computer on with the Client Program uploading the Movie to other peers for six weeks. Because the Client Program's default setting (unless disabled) is to begin uploading a piece as soon as it is received and verified against the expected Hash, it is not difficult to believe that a Defendant who downloaded the Movie on day one, would have uploaded the Movie to another Defendant or peer six weeks later.

*Patrick Collins*, 282 F.R.D. at 168.

All this means is that each putative defendant, having been active in the swarm at some point in time, is a *possible* source that *may* be able to distribute copyrighted material.  The mere capability of a defendant to upload to other defendants after his or her hit date by leaving the Client Program running is insufficient to support the assumption that such transactions are related. *See, e.g., Hard Drive Productions*, 809 F. Supp. 2d at 1164–65 (denying joinder and rejecting plaintiff's argument that Doe defendants' use of the same BitTorrent swarm makes each defendant a "possible" source that "may" be responsible for distributing the copyrighted file to the other defendants).  *Patrick Collins* also suggests that Doe defendants who participate in the same BitTorrent swarm are transactionally-related for the purposes of Rule 20 because activity is "traceable back to a specific initial seed through a series of transactions." 282 F.R.D. at 168.  The Court finds it difficult to imagine how such a tenuous connection would suffice in any other context.  If multiple defendants, without knowledge of one another and without relying on one another, were to physically travel to the same place at different times and dates to purchase a particular piece of copyrighted material from various individuals, who themselves are unaware of one another but could theoretically trace their possession of the copyrighted material back to

the same "original bootlegger" through varying degrees of separation, it is unquestionable that joinder would be improper. Without a showing that the Doe defendants actually exchanged pieces of the Works with one another, relied on each others' activity, or otherwise paved the way for each others' success in the swarm, all that is alleged is that the Defendants went to the same place at different times to engage in the same unlawful activity. While the law of joinder does not necessarily require temporal overlap or specific knowledge of other defendants, it does require more than mere allegations that two or more unrelated defendants stole the same product in the same way without ever interacting with one another. *See, e.g., LaFace Records, LLC v. Does 1-38*, 2008 WL 544992, at *7 (E.D.N.C. Feb. 27, 2008) ("[M]erely committing the same type of violation in the same way does not link defendants together for the purposes of joinder"); *see also Liberty Media Holdings*, 277 F.R.D. at 672 ("Under the BitTorrent protocol, it is not necessary that each of the [Doe Defendants] participated in or contributed to the downloading of each other's copies of the work at issue .... Any 'pieces' of the work copied or uploaded by any individual Doe may have gone to any other Doe or to any of the potentially thousands who participated in a given swarm.") (quoting *Hard Drive Productions, Inc.*, 809 F. Supp. 2d at 1163); *Raw Films, Ltd. v. Does 1-32*, No. 3:11cv532-JAG, 2011 WL 6182025, at *2 (E.D. Va. Oct. 5, 2011) ("The mere allegation that the defendants have used the same peer-to-peer network to copy and reproduce the Work—which occurred on different days and times over a span of three months—is insufficient to meet the standards of joinder set forth in Rule 20."). Therefore, the Court finds that in order to join multiple anonymous defendants in a single suit for copyright infringement based on the alleged use of the BitTorrent protocol, a plaintiff must either (1) establish that the defendants were simultaneously present in the same swarm, or (2) show that they accessed the swarm in close temporal proximity (within hours of one another, not days or

weeks) such that it can plausibly be inferred that the defendants may have downloaded and uploaded content through the same series of transactions.

Of course there is no guarantee that peers simultaneously present in a swarm will actually exchange data. In swarms containing thousands of peers and dozens of seed files, two peers may, theoretically, be active in the swarm at the same time without ever relying on one another to obtain a piece of the desired file. However, given the interconnected nature of data transfers that take place among peers who are present in a swarm *at the same time*, it would be reasonable to infer that such peers, at the very least, engaged in the same series of transactions for the purposes of Rule 20(a)(2). In this case, Malibu Media has plead no facts alleging that Doe 15 was simultaneously present in the swarm with any of the remaining Doe Defendants in this case, nor has it shown that Doe 15's "hit date" was in close temporal proximity to another Doe Defendant. Accordingly, the Court finds that any infringing acts by Doe 15 are not part of the same "transaction, occurrence, or series of transactions or occurrences" under Rule 20(a)(2).

Because Malibu Media cannot satisfy the first prong of the permissive joinder test—i.e., that the infringement arises "out of the same transaction, occurrence, or series of transactions or occurrences"—the Court need not address the second prong of the permissive joinder test to evaluate whether any question of law or fact is common to all the Defendants. The Court therefore finds that joinder of Doe 15 is improper under Rule 20. The Court therefore finds that joinder of Doe 15 as a defendant under Rule 20 is improper.

## VI.    All Remaining Defendants with the Exception of Doe 15 are Severed from the Case

Federal Rule of Civil Procedure 21 provides: "On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."

Fed.R.Civ.P. 21. Besides Doe 15, the Court notes that not a single defendant is alleged to have been present in the swarm at the same time as another defendant, and only two of the defendants originally sued in this case – Doe 3 and Doe 16 – appear to have accessed the swarm within the same 24-hour time frame. (Ex. A, Dkt. No. 24-1). Accordingly, Malibu Media has not demonstrated that *any* two defendants engaged in infringing activity as part of a common transaction, occurrence, or series of transactions or occurrences. Furthermore, it is unlikely that judicial economy will be achieved by trying what are, in essence, fourteen separate cases simultaneously. Each defendant is likely to assert a unique defense based on his or her situation, and will likely have to present evidence of that defense separately and independently. *See, e.g., Digital Sins*, 2012 WL 1744838, *2 ("Trying 245 separate cases in which each of the 245 different defendants would assert his own separate defenses under a single umbrella is unmanageable."). As another district court has recognized when assessing a similar mass litigation strategy to enforce copyrights on illegally downloaded music files:

> []Subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiff' works. John Does 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed ... Wholesale litigation of these claims is inappropriate, at least with respect to the vast majority (if not all) of Defendants.

*BMG Music v. Does 1-203*, Civ. A. 04–650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004); *see also VPR Internationale v. Does 1-1017*, No. 11-2068, 2011 WL 8179128, at *2 (C.D. Ill. Apr. 29, 2011) ("Where an IP address might actually identify an individual subscriber and address[,] the correlation is still far from perfect .... The infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment.").

Other courts have similarly recognized that the individualized issues related to each Doe defendant's defense would wash away any judicial economy that may have been achieved through a plaintiff's mass-litigation strategy. *See, e.g., In re BitTorrent Adult Film Copyright Infringement Cases*, 2012 WL 1570765, *12 (individualized determinations pertaining to Doe defendants who "raised a panoply of individual defenses .... far outweigh[ed] the common questions in terms of discovery, evidence, and effort required …. Thus, swarm joinder complicates [copyright infringement cases based on the use of BitTorrent], resulting in a waste of judicial resources"); *Liberty Media Holdings*, 277 F.R.D. at 672 ("Plaintiff has already requested on two separate occasions an extension to hold a joint scheduling conference. Such delay is directly attributable to the joinder of Defendants in this action."); *Pacific Century Int'l. Ltd. v. Does*, No. C-11-02533 (DMR), 2011 WL 5117424, at *3 (N.D. Cal. Oct. 27, 2011) ("It is likely that Defendants would assert different factual and legal defenses, and would identify different witnesses. Case management and trial ... would be inefficient, chaotic, and expensive."). Courts have also recognized that such mass litigation might place a heavy burden on the Defendants during discovery. *See Pacific Century*, 2011 WL 5117424, at *3 (observing that in cases against multiple Doe defendants, "each Defendant would have the right to be present at every other Defendant's depositions – a thoroughly unmanageable and expensive ordeal," and that *pro se* Defendants who do not e-file would be "required to serve every other Defendant with a copy of their pleadings and other submissions through the pendency of the action at substantial cost"). While maintaining a single case would benefit Malibu Media by allowing it to sue multiple defendants with just one filing fee and set of pleadings, this is not a proper basis for joinder. *See Digital Sins, Inc.*, 2012 WL 1744838, *2 ("The only economy that litigating these cases as a single action would achieve is an economy to the plaintiff—the

economy of not having to pay a separate filing fee for each action brought. However, the desire to avoid paying statutorily mandated filing fees affords no bases for joinder."); *In re BitTorrent Adult Film Copyright Infringement Cases*, 2012 WL 1570765, *12 (finding that in four consolidated copyrighted cases involving the BitTorrent protocol, plaintiffs "improperly avoided more than $25,000 in filing fees by employing [their] swarm joinder theory"). The fact that plaintiffs typically file such cases hoping to quickly enter settlement agreements does not change the Court's determination of whether joinder is appropriate. The fact remains that if Malibu Media's claims against the various Doe defendants were to move forward into more detailed discovery and to trial, this case would impose significant procedural inefficiencies and burdens on both the Court and on almost every party in the case.

As nearly every defendant in this case engaged in a separate series of transactions when downloading the Works and mass litigation against several defendants would prove unmanageable at trial and unfairly burdensome on the Defendants, the Court severs Malibu Media's claims against all defendants with the exception of Doe 15. *See, e.g., Digital Sins*, 2012 WL 1744838, *2 (severing claims against all defendants except John Doe 1 after determining that joinder was improper in a BitTorrent case). While courts in this situation generally sever all defendants with the exception of the first, *see, e.g., Digital Sins, Inc.*, 2012 WL 1744838, at *2, Rule 21 does not impose a requirement that the severing court retain the first named defendant over all others. *See* Fed.R.Civ.P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop *a* party. The court may also sever any claim against *a* party.") (emphasis added). Having decided several issues pertaining to Doe 15, including Doe 15's Motion to Show Cause, Motion to Quash, and Motion to Proceed Anonymously, the Court finds, in the interest of judicial economy, that it is appropriate to retain Doe 15 rather than Defendant David J. Reynolds,

the first-named defendant in this case. *See Sunlust Pictures*, 2012 WL 3717768, at *3 ("A court may, on motion or on its own, add or drop a party or sever *any* claim against *any* party at any time.") (citing Fed.R.Civ.P. 21) (emphasis added); *Walgreens Co. v. Networks—USA V, Inc.*, No. 12 C 1317, 2012 WL 6591810, at *1 (N.D. Ill. Dec. 17, 2012) (St. Eve, J.) ("It is well-settled that a district court has broad discretion under Rule 21.") (citing *Chavez v. Illinois State Police*, 251 F.3d 612, 632 (7th Cir. 2001) (appellate court "accord[s] wide discretion to a district court's decision concerning the joinder of parties")).

## <u>CONCLUSION</u>

For the reasons stated, Doe 15's Motion to Quash and Motion to Show Cause based on a lack of standing are denied. Doe 15's Motion to Proceed Anonymously is granted. Any publicly filed documents referencing Doe 15 should refer to Doe 15 by his "John Doe" identifier rather than his real name. Pursuant to Fed.R.Civ.P. 21, all remaining defendants are severed from this case with the exception of Doe 15. The clerk is ordered to sever the claims against Defendants David J. Reynolds, Felix Stanek, Gregory Blake, and John Doe 11 from this case, to treat the claims against those defendants as separate actions, and to assign a separate docket number to each action. Malibu Media is directed to file separate amended complaints containing only its claims against each individual defendant. As the remaining defendants have been severed from this case pursuant to Fed.R.Civ.P. 21 and Doe 15 is the only remaining defendant in this case, Doe 15's Motion to Sever is denied as moot.

_Virginia M. Kendall_
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: March 7, 2013